Keith SODERBECK, Respondent,

v.

CENTER FOR DIAGNOSTIC IMAGING, INC., Appellant.

No. A10–674.

Court of Appeals of Minnesota.

Dec. 21, 2010.

438

Owen L. Sorenson, Meghan A. Cooper, Stringer & Rohleder, St. Paul, MN, for respondent.

Robert Mahoney, Geraghty, O'Loughlin & Kenney, P.A., St. Paul, MN, for appellant.

Considered and decided by HUDSON, Presiding Judge; WRIGHT, Judge; and ROSS, Judge.

## OPINION

HUDSON, Judge.

Appellant medical diagnostic company challenges the district court's judgment in favor of respondent awarding interest on a personal-injury settlement of respondent's medical-malpractice action. Because the settlement agreement does not provide for interest and respondent repudiated the settlement agreement, we conclude that the settlement amount did not become due or ascertainable and thus appellant is not liable for interest on the settlement amount. We therefore reverse.

## FACTS

On December 9, 2003, respondent Keith Soderbeck agreed to settle his medical-malpractice lawsuit against appellant Center for Diagnostic Imaging, Inc. (CDI), for $150,000. The settlement agreement did not mention interest. The next day, Soderbeck repudiated the settlement agreement and refused to sign a release and stipulation for dismissal. CDI moved the district court to enforce the agreement.

After a two-year procedural delay, the district court determined that the settlement agreement was valid and enforceable. Soderbeck appealed, claiming that the settlement agreement was invalid because it was improvident and he was incompetent due to the influence of medication. This court affirmed the de-

termination that Soderbeck was competent at the time of settlement, but we remanded for the district court to decide whether the settlement was improvident. *Soderbeck v. Ctr. for Diagnostic Imaging, Inc.*, No. A06–2369, 2007 WL 4564109 (Minn.App. Dec. 31, 2007).

On remand, the district court determined that the settlement was provident and granted CDI's motion to enforce, but it reserved ruling on whether CDI owed interest on the $150,000 settlement amount. On October 13, 2008, CDI tendered the $150,000 settlement payment to Soderbeck, and, on the same day, Soderbeck filed a motion for interest pursuant to Minn.Stat. § 334.01 (2008). The district court awarded Soderbeck interest from December 9, 2003, when the settlement agreement was signed, to October 13, 2008, when CDI tendered the settlement funds. It entered judgment for $43,550 in interest against CDI.

CDI appealed. By order opinion, this court remanded for the district court to explain its reasons for ordering interest. *Soderbeck v. Ctr. for Diagnostic Imaging, Inc.*, No. A09–569, order op. (Minn.App. Nov. 24, 2009). The district court issued a clarifying order justifying the award of interest on the grounds that CDI incurred a legal indebtedness of $150,000 on the date of settlement and therefore owed interest through the date of tender at the six-percent rate set forth in Minn.Stat. § 334.01, subdivision 1. The district court determined that (1) CDI acknowledged its indebtedness when it opted to enforce the settlement agreement; (2) CDI could have deposited the settlement funds with the court to avoid liability for interest, but it declined to do so and, thus, had the benefit of the use of the funds; and (3) as a matter of equity, CDI was, therefore, required to pay interest. The district court again entered judgment in the amount of $43,550 in interest against CDI. This appeal follows.

## ISSUE

Did the district court err in determining that CDI was liable for interest accruing on the settlement funds between the date of settlement and the date of tender?

## ANALYSIS

■ We review de novo the determination that there is a contractual, statutory, or remedial basis for damages. *See Booth v. Gades,* 788 N.W.2d 701, 705 (Minn.2010) (reviewing de novo construction of settlement agreement); *Potter v. Hartzell Propeller, Inc.,* 291 Minn. 513, 518–19, 189 N.W.2d 499, 504 (1971) (reviewing de novo award of interest as damages); *Trapp v. Hancuh,* 587 N.W.2d 61, 63 (Minn.App. 1998) (reviewing de novo construction of Minn.Stat. § 549.09). But we review for clear error the finding that the amount on which interest is to be paid is due or ascertainable. *See Trapp,* 587 N.W.2d at 63–64.

Soderbeck suggests that we review the district court's award of interest for an abuse of discretion because the district court based its award, in part, on principles of equity. *See In re Estate of Renczykowski,* 409 N.W.2d 888, 892 (Minn.App. 1987) (reviewing district court's award of interest based on equity for abuse of discretion). But as we discuss below, the district court erroneously invoked equitable principles, and its decision is therefore not appropriately reviewed for an abuse of discretion.

■ "[T]here can be no liability for interest where there is a liability to pay money, but no express promise to pay interest thereon, no statutory obligation to do so, and no default consisting of failure to pay the money when due." *Lappinen v. Union Ore Co.,* 224 Minn. 395, 413, 29

N.W.2d 8, 20 (1947). Interest in the case of default is an amount awarded for "failing to pay money when due" to compensate for "the value of the use of the money" during the delay. *Lund v. Larsen,* 222 Minn. 438, 441, 24 N.W.2d 827, 829 (1946). But "when the amount of money 'due' is not even applied for or ascertained," a party cannot be in default, nor can interest begin to accrue. *Youngner v. State,* 275 Minn. 340, 344, 147 N.W.2d 354, 357 (1966).

■ Here, the parties agree that the settlement agreement does not provide for interest. The parties also appear to agree that Soderbeck is not entitled to pre- or postjudgment interest under Minn.Stat. § 549.09 (2010) because Soderbeck did not obtain a verdict, award, or judgment for the recovery of money; rather, his malpractice claim was resolved by the mediated settlement agreement. And while Soderbeck is seeking interest at the six-percent rate under Minn.Stat. § 334.01, subd. 1, this statute does not establish Soderbeck's right to interest in the first instance. Thus, the issue that controls the parties' dispute is whether CDI is liable for interest because it did not pay the settlement amount over the five-year period during which Soderbeck challenged the validity of the settlement agreement.

*Repudiation*

■ The district court found that the settlement amount became due on December 9, 2003, the date the parties entered the settlement agreement. But "[i]t is elementary that a breach of a contract by one party excuses performance by the other." *Wasser v. W. Land Secs. Co.,* 97 Minn. 460, 466, 107 N.W. 160, 162 (1906). Not only did Soderbeck immediately breach the settlement agreement by repudiating it, he spent almost five years challenging its enforceability. Thus, the dis-

trict court's finding that the settlement amount became due on December 9 was clearly erroneous because CDI had no obligation to perform—and therefore could not be in default—during the period of Soderbeck's repudiation.

■ Soderbeck counters that CDI was in default based on the doctrine of election of remedies. "The doctrine of election of remedies applies only where a party adopts one of two or more coexisting and inconsistent remedies which the law affords upon the same state of facts." *Hardware Mut. Cas. Co. v. Ozmun,* 217 Minn. 280, 287, 14 N.W.2d 351, 355 (1944). The doctrine "is a form of estoppel; its purpose is not to prevent recourse to a potential remedy but to prevent double redress for a single wrong." *Kosbau v. Dress,* 400 N.W.2d 106, 110 (Minn.App. 1987).

The district court's reliance on this doctrine is misplaced because this case does not involve an election of inconsistent remedies. CDI sought and obtained one remedy—specific performance. In defending itself against Soderbeck's request for interest, CDI is not seeking an additional or inconsistent remedy. Rather, CDI is defending itself against Soderbeck's claim that CDI was in default even while Soderbeck was repudiating the settlement agreement.

*Ascertainability of the amount owed*

Minnesota jurisprudence also provides that interest starts to accrue only when the amount owed is ascertainable—meaning that it can be computed and is not subject to any contingency. *Potter,* 291 Minn. at 518, 189 N.W.2d at 504; *Lacey v. Duluth, Missabe & Iron Range Ry.,* 236 Minn. 104, 107–108, 51 N.W.2d 831, 834 (1952). The district court found that CDI's liability to Soderbeck became ascertainable on December 9, 2003. We con-

clude that this finding was clearly erroneous based on *Glodek v. Rowinski,* 390 N.W.2d 477 (Minn.App.1986), *review denied* (Minn. Sept. 24, 1986), and *Eide v. State Farm Mut. Auto. Ins. Co.,* 492 N.W.2d 549 (Minn.App.1992).

In *Glodek,* two shareholders in a closely-held corporation who also owned property as partners entered an agreement granting the survivor the right to purchase the other's ownership interest. *Glodek,* 390 N.W.2d at 479. One of the partners died, but his estate refused to sell his ownership interest. *Id.* at 480. The surviving partner moved to enforce. *Id.* The estate eventually agreed to sell the decedent's ownership interests, but the parties still disputed the value of the corporation's assets. *Id.* The district court ascertained the value of the assets and ordered that the survivor pay prejudgment interest. *Id.* The survivor appealed, and this court reversed the award of prejudgment interest on the grounds that the value of the assets was not readily ascertainable until trial. *Id.* at 481. This court concluded first, that the assets were unique and could not be easily appraised, and second, that the estate's own conduct prevented the appraisal and delayed its receipt of the purchase price. *See id.* at 481–82.

In *Eide,* an insured was in negotiations with her insurance company regarding a claim for underinsured-motorist benefits. *Eide,* 492 N.W.2d at 552. The insured entered a settlement agreement, which she then repudiated. *Id.* The insured requested arbitration, but the insurer opposed the request. *Id.* The district court granted the insured's motion to compel arbitration but reserved the right to de novo review of the arbitrators' findings. *Id.* at 553. The arbitrators found that the insured had not entered a settlement agreement and entered an award of $26,000 in her favor. *Id.* The district court held a jury trial de

novo, and the jury found that the insured had entered into a settlement agreement and awarded the insured $15,000, the amount of the settlement agreement. *Id.* The district court entered judgment on the jury's award. *See id.* The insured appealed, and this court affirmed, holding that the insurer's liability did not become ascertainable until the date of the district court's decision. *Id.* at 556. This court concluded first, that the insurer could not be certain whether it owed $15,000 or $26,000 until the completion of trial, and second, that the insured's decision to repudiate the settlement agreement had caused the delay in her receipt of the settlement funds. *Id.*

The circumstances here are analogous to both *Glodek* and *Eide,* but particularly to *Eide.* Soderbeck entered into a settlement agreement, which he repudiated the next day. CDI moved to enforce the settlement agreement and compel Soderbeck to accept the settlement amount. Similar to the situations in *Glodek* and *Eide,* there was uncertainty as to whether CDI would have to pay Soderbeck $150,000 under the settlement agreement or a different amount pursuant to a subsequent court or jury award. Moreover, as in *Glodek* and *Eide,* the delay in Soderbeck's receipt of the settlement funds was a direct result of his own decision to repudiate the settlement agreement for nearly five years. Therefore, based on *Glodek* and *Eide,* the district court clearly erred in finding that CDI's liability was ascertainable and that interest began accruing as of the date of settlement.

■ Soderbeck relies on *Solid Gold Realty, Inc. v. Mondry,* 399 N.W.2d 681 (Minn.App.1987) to argue that CDI's liability was indeed ascertainable as of the date of settlement. In that case, a real estate broker and a homeowner entered into an exclusive listing agreement under which

the homeowner agreed to pay the broker six percent of the sale price if the house sold during the term of the agreement. *Id.* at 682. The homeowner sold the property on his own in a transaction that involved the trade of properties, and the broker brought an action to recover its commission and interest. *Id.* The district court awarded the broker its commission but denied interest. *Id.* The broker appealed.

This court reversed, concluding that the homeowner's liability was ascertainable as of the date that the broker demanded payment. *Id.* at 684. This court observed that:

> the question was not whether the parties agreed on the amount of damages *but whether [the defendant] could have determined the amount of its potential liability from a generally recognized objective standard of measurement.* . . . Mere difference of opinion as to the exact amount of damages was not sufficient to excuse [the defendant] from compensating [the plaintiff] for loss of the use of its money.

*Id.* (quoting *ICC Leasing Corp. v. Midwestern Mach. Co.,* 257 N.W.2d 551, 556 (Minn.1977)). This court concluded that, even though the homeowner had denied liability altogether and had pointed out some difficulty in calculating the value of the house he acquired in the trade, he could have determined his potential liability using general market principles. *Id.* at 684. Therefore, the district court erred in denying the broker's motion for interest. *Id.*

Soderbeck argues, based on *Solid Gold Realty,* that CDI could have easily ascertained its liability by referring to the plain language of the settlement agreement. *See id.* But unlike the homeowner's liability in *Solid Gold Realty,* CDI's liability was not yet ascertainable. Although

CDI's liability under the settlement agreement was clearly $150,000, if the settlement agreement had been found invalid or unenforceable, a judge or jury would have determined the amount of CDI's liability in a subsequent malpractice trial. Soderbeck cites no authority for the proposition that CDI could have divined this amount using generally accepted market principles. Soderbeck therefore was not entitled to interest as damages for CDI's purported default as a matter of law.

*Equity*

Soderbeck also contends that the district court was authorized to award interest based on equitable considerations. Soderbeck relies on *Renczykowski,* a case that arose out of a dispute regarding the division of partnership assets between two brothers, one of whom ceased participation in the partnership in 1970 and repeatedly sought an accounting of the partnership's assets. *Renczykowski,* 409 N.W.2d at 890. The brother who was still active in the partnership died in the early 1980s. *Id.* Following a will contest, the surviving brother filed a claim with his deceased brother's estate, which disallowed the claim. *Id.* The surviving brother filed a petition to proceed on the claim. *Id.* The district court awarded the surviving brother's claims and granted him interest going back to 1970. *Id.* This court affirmed the award of interest as a proper exercise of the district court's equitable powers. *Id.* at 893.

The holding in *Renczykowski* is quite narrow. The *Renczykowski* court concluded that the award of interest was within the district court's equitable powers based on the "particular equitable circumstances" of the case. *Id.* The *Renczykowski* court also recognized that the award of interest would have also been justified on other grounds, namely because the liability at issue was ascertainable and because the

prejudgment interest statute was applicable for part of the time period at issue. *Id.* at 893.

"[E]quitable relief cannot be granted where the rights of the parties are governed by a valid contract." *United States Fire Ins. Co. v. Minn. State Zoological Bd.,* 307 N.W.2d 490, 497 (Minn.1981). Here, the parties had a valid settlement agreement. Soderbeck could have negotiated with CDI to pay him interest for any delay in tender of the settlement amount, even if Soderbeck himself was responsible for the delay. Soderbeck did not do so, and the district court therefore was not permitted to resort to equity to award Soderbeck interest for which he did not bargain. *See Schimmelpfennig v. Gaedke,* 223 Minn. 542, 548, 27 N.W.2d 416, 420 (1947) (stating that "where there is an express contract, there can be no contract implied in fact or quasi contractual liability with respect to the same subject matter").

Moreover, even if we were to assume that the district court had the equitable power to order interest, we conclude that it was an abuse of discretion to do so. The district court found that Soderbeck was entitled to interest as a matter of equity because CDI retained the benefit and use of the settlement funds. But Soderbeck himself repudiated the settlement agreement and caused the delay in his receipt of the funds. Because Soderbeck's own conduct was inequitable, he cannot obtain equitable relief. *See Home Ins. Co. v. Nat'l Union Fire Ins.,* 658 N.W.2d 522, 535 (Minn.2003) (stating that "one who comes into equity must come with clean hands" (quotation omitted)); *see also Glodek,* 390 N.W.2d at 481 (finding that party was not entitled to interest in part because it had challenged the underlying agreement and caused the delay in receipt of funds at issue).

Finally, Soderbeck argues that he is entitled to interest because CDI retained the opportunity to use the settlement funds rather than depositing them with the district court under Minn. R. Civ. P. 67.01. Essentially, Soderbeck contends that, because CDI could have deposited the funds with the court and avoided any liability for interest, it should now be liable for interest because it did not avail itself of this option. But the rule does not require a deposit of money with the district court while the action is pending. *See id.* Moreover, as CDI points out, Soderbeck's assertion is legally incorrect: there is nothing in the language of Minn. R. Civ. P. 67.01 or in cases interpreting this rule that would indicate that a party can avoid an order to pay interest pursuant to Minn. Stat. § 334.01, subd. 1, by simply depositing the funds at issue with the district court. Finally, as CDI also argues, even if Soderbeck's assertion were true, just because CDI could have deposited the funds and avoided interest does not mean that CDI incurred an obligation to pay interest based on its failure to do so.

## DECISION

During Soderbeck's repudiation period, CDI had no obligation to perform, and CDI's liability was neither due nor ascertainable. And there was no requirement for interest in the repudiated settlement agreement itself. CDI is not liable to Soderbeck for interest on the settlement amount. We therefore reverse.

**Reversed.**